UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hannah L.,[1]

                Plaintiff,                      Court File No. 22-cv-3102 (ECT/LIB)

      v.                                **REPORT AND RECOMMENDATION**

Martin J. O'Malley,
Commissioner of Social Security Administration,

                Defendant.

      Plaintiff, Hannah L. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

      Both parties filed briefs regarding Plaintiff's request for judicial review of the final administrative decisions of the Commissioner of Social Security. [Docket Nos. 13,15,16]. Pursuant to the Local Rules on social security appeals in this District, the Court took the matter under advisement on the written submissions.

      For the reasons discussed below, the Court recommends that Plaintiff's request for relief, [Docket No. 13], be **DENIED**, and that Defendant's request to affirm the decision of the Commissioner of Social Security, [Docket No. 15], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I.  Procedural History

On January 10, 2020, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI. (Tr. 23).[2] Plaintiff alleged that her disability began on September 4, 2011. (Tr. 23). The claim was initially denied on March 24, 2020, and again, upon reconsideration, on June 15, 2020. (Tr. 23). On August 19, 2020, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 23).

Administrative Law Judge Corey Ayling (the "ALJ") conducted a video hearing on July 14, 2021. (Tr. 23). Plaintiff was represented by legal counsel at the administrative hearing. (Tr. 23). Plaintiff and an impartial vocational expert ("IVE"), Kenneth Ogren ("IVE Ogren"), testified at the hearing. (Tr. 80). On October 21, 2021, the ALJ issued a decision denying Plaintiff's claim. (Tr. 20–41). The ALJ concluded that Plaintiff had the capacity for a reduced range of light work, (Tr. 20–41), despite the state medical consultants recommending a reduced range of medium work. (Tr. 100, 117).  Ultimately, the ALJ chose to reduce the level of work after receiving further evidence as to the condition of the Plaintiff's knees. (Tr. 40–41).

Plaintiff thereafter sought a review of the decision by the Appeals Council. (Tr. 8). Subsequently, on September 7, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 8–11). Accordingly, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On December 16, 2022, Plaintiff filed the present action. (Complaint [Docket No. 1]). Plaintiff challenges the ALJ's RFC determination on the basis that the ALJ used his lay opinion to

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 12], by the abbreviation "Tr." The Administrative Record is consecutively paginated across all exhibits. (See Administrative Record [Docket No. 12]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

interpret Plaintiff's medical records and that the ALJ failed to properly evaluate Plaintiff's subjective symptoms.

## II. Standards of Review

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant

unless the matter is appealed to federal district court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 8–11), thus making the ALJ's decision effectively the final decision of the Commissioner.

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support

the opposite conclusion. <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision (through the ALJ), the court must affirm the decision. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." <u>Id.</u> "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009) (internal quotations omitted).

The claimant bears the burden under the Social Security Act of proving she is disabled. <u>See</u> 20 C.F.R. § 404.1512(a); <u>Whitman v. Colvin</u>, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. <u>Goff v. Barnhart</u>, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff was alleging disability beginning September 4, 2011. Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 10, 2020, the amended alleged onset date. (Tr. 25). This finding is not in dispute. The Court will refer to the time period between Plaintiff's alleged onset date and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had a "history of mood disorder, bipolar II disorder, depressive disorder, attention deficit disorder, anxiety, somatization disorder, history of marijuana abuse, history of alcohol abuse, cervical degenerative disc disease, chronic pain, knee bursitis, and obesity." (Tr. 25). This finding is not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met, or medically equal listing described in Appendix 1 of the Regulations (20 C.F.R. 404, Subpart P, Appendix 1). (Tr. 26). The ALJ found that Plaintiff's cervical degenerative disk disease did not meet or medically equal listing 1.15. (Tr. 27). Likewise, the ALJ found that Plaintiff's impairments did not meet or medically equal listing 1.18. (Tr. 27). In addition, the ALJ found the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.11. (Tr. 28). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following limitations: occasionally climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasionally balancing as that term is defined in the Selected Characteristics of Occupations; occasionally stooping, kneeling, crouching, and crawling; no work at unprotected heights; no work near moving mechanical parts, the kind of moving machinery such

> that the loss of balance in proximity of that machinery would pose a severe safety hazard to life or limb; limited to performing simple, routine and repetitive tasks using judgment limited to simple work-related decisions; occasional and superficial interactions with supervisors and coworkers, such that the work is rated no lower than 8 on the people scale of Appendix B to the DOT, 1991 Revised Edition; and no interactions with the general public.

(Tr. 31). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 32). Plaintiff challenges this credibility finding by the ALJ.[3]

The ALJ found that Plaintiff was "unable to perform any past relevant work." (Tr. 40). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 40). Relying upon testimony from IVE Ogren, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "stuffer" of which there are 210,000 positions in the national economy; "Bagger of Product/Garment" of which there are 47,000 positions in the national economy; and "Laundry Aide" of which there are 230,000 positions in the national economy. (Tr. 41). Other than implicit

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. See Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

challenges based on Plaintiff's challenge of the ALJ's findings at step four, Plaintiff does not challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 41).

## IV. Analysis

Plaintiff asserts three general overarching issues on her appeal of the ALJ's decision: (1) that the ALJ improperly used his lay opinion in determining the RFC, (2) the ALJ failed to properly evaluate Plaintiff's subjective symptoms, and (3) whether or not substantial evidence in the record, as a whole, exists to support the ALJ's RFC determination. (See Plf.'s Mem. [Docket No. 13] at p. 9).

In support of her first argument, Plaintiff alleges that the ALJ "played doctor" and interpreted the medical records on his own and did not derive his conclusion from a physician. (See Id. at pp. 14, 18–19). In support of her second argument, Plaintiff asserts that the ALJ errored in improperly evaluating Plaintiff's subjective complaints of pain and her mental health complaints. (See Id. at pp. 15–20, 21, 25). Specifically, Plaintiff asserts that the ALJ improperly assessed the weight given to the opinion evidence while substituting his own lay-opinion when evaluating Plaintiff's subjective complaints of both her mental health and her chronic pain. (See Id. at pp. 21, 25–27). Plaintiff's third argument is a catchall argument and contends that the ALJ's RFC determination is not supported by substantial evidence due to various purported deficiencies. (See Id. at 21–27).

"A claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden

8

to establish h[er] RFC." <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." <u>Id.</u> at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." <u>Hensley v. Colvin</u>, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." <u>Perks v. Astrue</u>, 687 F.3d 1086, 1092 (8th Cir. 2012).

### A. Plaintiff's Argument that the ALJ's RFC Determination was Based on his Lay Opinion.

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because it is improperly based on the ALJ's lay opinion. (Plf.'s Mem. [Docket No. 13] at pp. 11, 13–20). Specifically, the determination that Plaintiff can perform light work which "requires a good deal of walking or standing," is not based on medical opinion but rather the ALJ's lay opinion interpreting medical records. 20 C.F.R. 416.967(b). Plaintiff centers her argument on her assertion that the ALJ was interpreting Plaintiff's imaging of her knee when the ALJ stated:

> [t]he condition is complicated by knee bursitis and knee pain with use of braces (Ex. 15F/13; 18F/38). However, imaging showed chondromalacia but no tearing, EMG testing was negative, and recent x-ray imaging showed no fracture of the shaft of the tibia or fibula (Ex. 17F/23; 8F/52; 19F/1)…Thus, given the chronic pain complaints and obesity with knee pain, I have reduced the residual functional capacity from medium to light exertional work, with the postural and environmental limitations set forth above.

(Tr. 32). Plaintiff asserts, that the ALJ, who is not a medical doctor, drew on his own lay medical collusion about the severity of Plaintiff's condition and translated imaging results into functional capacity without any medical opinions. (Plf.'s Mem. [Docket No. 13] at p. 19).

The RFC is an "administrative assessment" rather than a medical assessment; it is, therefore, "the responsibility of the ALJ, not a physician, to determine a claimant's RFC." Boyd v. Colvin, 831 F.3d 1015, 1020 (8th Cir. 2016). "There is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F. 3d 926, 932 (8th Cir. 2016).

The ALJ based his conclusions of what the images showed on medical records where the images were first interpreted by a physician. The ALJ cited Exhibit No. 17F/23 (Tr. 2050) to conclude that Plaintiff had "Chondromalacia of the lateral femoral condyle and patellofemoral articulation," but "no evidence for medial or lateral meniscal tearing [was] seen." The ALJ's cited Exhibit No. [19F/1] (Tr. 2172) to show that on June 11, 2021, the Plaintiff's examining physician reported that there was "[n]o fracture of the shaft of the tibia or fibula" and "[n]o acute bony abnormality [was] seen" from an X-ray image. To support the assertion that "EMG testing was negative," (Tr. 32), the ALJ cites Exhibit No. [18F/52] (Tr. 2117) provides a physician's report on Plaintiff's EMG and Nerve Conduction Studies, and gives the finding that "[c]oncentaric needle electromyography of selected muscles in bilateral upper and lower extremities was normal."[4]

At least part of Plaintiff's contention appears to be a semantic issue. The ALJ is not drawing these conclusions based on his own opinion, but he is instead relying on the record as the conclusions of the Plaintiff's treating physicians listed in each of the cited Exhibits. However, Plaintiff also asserts that the "ALJ had a duty to obtain a medical opinion from a qualified professional regarding the impact Plaintiff's knee impairments had on Plaintiff's ability to perform work-related activities." (Plf.'s Mem. [Docket No. 13] at p. 19). Plaintiff cites Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001), as support. However, under Lauer, the ALJ is required to consider at least some supporting evidence from a medical professional in determining the RFC, Lauer,

---

[4] The ALJ made a small typo citing the proper medical record to support the assertion that "EMG testing was negative." (Tr. 32). The ALJ cited Exhibit No. "8F/52," but the correct cite is 18F/52.

245 F.3d at 704, but, <u>Lauer</u> does not alter the fact that the RFC is a determination made by the ALJ using the record before him. <u>Boyd</u>, 831 F.3d at 1020.

Here, the ALJ also examined the opinions of the State Agency Medical Consultants in Ex. 1A and 4A, (Tr. 99–103, 115–120), who opined that Plaintiff has the capacity for "medium exertional work with postural limitations." However, the ALJ found that the record, as a whole, supported <u>greater</u> limitations on Plaintiff's capacity for work. (Tr. 38). Accordingly, the ALJ <u>reduced</u> the opined medium exertional work to light work with postural and environmental limitations. (Tr. 38).[5]

Plaintiff's argument essentially distills down to the following: given the Plaintiff's record and condition, the ALJ should have developed the record even further, and if he had done so, he would or should have found her "unable to even do sedentary level work and [she] would have been deemed disabled." (Plf.'s Mem. [Docket No. 13] at p. 20).

While there is no requirement that a specific medical opinion support an RFC finding, the RFC must be supported by substantial evidence. <u>Hensley</u>, 829 F.3d at 932. The ALJ does just this in the present case. While finding the State Agency Medical Consultant's reports persuasive, given the evidence of Plaintiff's treating physician's reports, the ALJ departed from the State Agency Medical Consultant's recommendation and instead determined an even lower RFC to better reflect the Plaintiff's condition.

While Plaintiff may disagree with the ALJ's eventual assessment, the Court will not reverse simply because some evidence in the record might support a conclusion other than that reached by

---

[5] Put more succinctly, the ALJ's RFC assessment is that Plaintiff can do jobs that might require her to stand or walk for up to six hours a day, but Plaintiff does not believe she can do such a job. When asked by the ALJ "Do you think physically you could be either seated or on your feet for eight hours to do a job?" Plaintiff responded, "[n]o I definitely don't think I could at all." (Tr. 59). This is because Plaintiff stated that she had constant knee pain with risk of dislocation when standing, but she cannot sit either due to a combination of her back and knee problems. (Tr. 58).

the Commissioner. <u>Fentress v. Berryhill</u>, 854 F.3d 1016, 1020 (8th Cir. 2017). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994). The Court will not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. <u>Milam v. Colvin</u>, 794 F.3d 978, 983 (8th Cir. 2015); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993). For the Court to reverse, the Court must find that it would not be possible for any reasonable fact-finder to come to the conclusion reached by the ALJ. <u>Barnett v. Barnhart</u>, 362 F.3d 1020, 1022 (8th Cir. 2004). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." <u>Id.</u> "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

Accordingly, this Court finds that the RFC conclusion reached by the ALJ is supported by substantial evidence in the record.

## B. Plaintiff's Argument that Her Subjective Complaints were not Property Considered by the ALJ.

Plaintiff argues that the ALJ failed to cite any evidence that was inconsistent with Plaintiff's subjective complaints of knee pain and mental health symptoms. (<u>See</u> Plf.'s Mem. [Docket No. 13] at p. 26). While Plaintiff recognizes the ALJ cited the multiple reports of Plaintiff's medical records regarding her knee, Plaintiff again asserts that the ALJ impermissibly

used his own lay opinion to interpret the imaging results, and therefore, he lacked a proper basis for rejecting Plaintiff's subjective symptoms. (Plf.'s Mem. [Docket No. 13] at p. 26). Further, Plaintiff argues that the ALJ did not properly consider Plaintiff's alleged mental symptoms in so far as they have a limiting effect on Plaintiff's capacity to work. (Plf.'s Mem. [Docket No. 13] at p. 26-27).

An ALJ should evaluate a claimant's subjective symptoms based on all of the evidence in the record. See Michael R. v. Berryhill, 18-cv-241-NEB-KMM, 2019 WL 5149978, at *9 (D. Minn. June 11, 2019), report and recommendation adopted by 2019 WL 4233852 (D. Minn. Sept. 6, 2019). Pursuant to 20 C.F.R. § 404.1529(c)(3), an ALJ should consider the following factors: (i) the claimant's daily activities; (ii) location, duration, frequency, and intensity of pain and other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications taken by the claimant to alleviate pain and other symptoms; (v) treatment, other than medication, that has been received by the claimant for relief of pain or other symptoms; (vi) other measures used by the claimant to relieve pain and other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. "These factors are essentially the same as those identified by the Eighth Circuit as relevant to evaluating a claimant's credibility." Michael R., 2019 WL 5149978, at *9; see also Shultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007); Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

An ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.'" Social Security Ruling 16-3p, 2016 WL 1119029, at *9. Nevertheless, the ALJ is not required to explicitly discuss each factor. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005);

Michael R., 2019 WL 5149978, at *10. "The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing Polaski, 739 F.2d at 1322). Where the ALJ's credibility determination is supported by good reasons and substantial evidence in the record as a whole, the Court is bound to accept the credibility determination of the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (citing Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003)); see also Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008).

### i.    Plaintiff's Subjective Complaints of Pain

In the present case, the ALJ found that the "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence or other evidence in the record." (Tr. 32). The ALJ then noted "the claimant presents with chronic pain, assisted as multifactorial without cord compression or need for surgery." (Tr. 32). Further, the ALJ mentions that Plaintiff's "physical health history is remarkable for morbid obesity, addressed with gastric bypass surgery on February 12, 2020. (Tr. 32).

The ALJ then reiterated some of the health records mentioned in the previous section above regarding Plaintiff's "knee bursitis and knee pain with [the] use of braces," her chondromalacia but with no tearing of the meniscus, Plaintiff's negative EMG testing, and her x-ray which revealed no fracture to the shaft of the tibia or fibula. (Tr. 32). Further, the ALJ discussed Plaintiff's cervical imaging report, which her treating physician stated showed only "mild degenerative disk disease with some foraminal stenosis." (Tr. 32, 1811–1812, 1835, 2092, 2152, 2201–2202). In addition, that same report regarding her thoracic imaging showed no stenosis. Id.

Taking the <u>Polaski</u> factors one at a time, the ALJ gave consideration to Plaintiff's daily activities where ALJ reiterated that Plaintiff testified that "she has days when she does not get out of bed to engage in activities." (Tr. 32).  The ALJ further noted Plaintiff's testimony that she had "pain when standing, sitting, kneeling, talking, and climbing stairs." (Tr. 32).

Under the second <u>Polaski</u> factor, the ALJ took into account the Plaintiff's claim that her pain was "chronic" which presented her with "difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, talking, and climbing stairs." (Tr. 32). The ALJ noted that Plaintiff's symptoms were allegedly "aggravated by bending, walking upstairs, walking downstairs, sitting, standing, walking, and housework and lifting." (Tr. 35). However, the ALJ also took into account that Plaintiff was not fully or partially hospitalized and was under pain management being "prescribed tizanidine" and "corticosteroid injections in March of 2021." (Tr. 33, 35, 2206). Further, the ALJ took into account "[p]hyisical exam findings that noted strong and symmetrical motor power with no abnormal movements observed, and normal gait and station." (Tr. 35, 2207). Such evidentiary findings by the ALJ contribute to his assessment of the Plaintiff's subjective complaints of plain.

Under the third <u>Polaski</u> factor, which assesses the dosage, effectiveness, and side effects of prescribed medication, as mentioned above, the ALJ noted that the Plaintiff was prescribed tizanidine and corticosteroid injections. The record reflects that these treatments <u>are</u> <u>helping</u> the Plaintiff, and nothing in the record shows profound or unexpected side effects of the treatments. The ALJ did observe that in April of 2020, Plaintiff reported engaging in activities such as walking with friends, playing with her pets, keeping her house clean, doing laundry, reading, and planning a trip to Hawaii in December 2020. (Tr. 36-37)

Under the fourth Polaski factor, which focuses on precipitating and aggravating factors, the ALJ indicated that while the record shows Plaintiff was obese, in roughly a year and a half, Plaintiff had gone from a BMI of 46.36 in November of 2019 down to 33.39 in June of 2021. (Tr. 36). Plaintiff also reported that she had lost 60 pounds. (Tr. 36).

As for the final Polaski factor regarding functional restrictions, the ALJ observed that Plaintiff's "[p]hysical exam findings in November 2020 noted limited range of motion in both knees, but [Plaintiff could] ambulate[] without any assistance [and had a] 'pretty steady walk'" (Tr. 33). The ALJ also indicated, as mentioned above, that Plaintiff self-reported being able to do household activities, walk with friends, and, at least as of April of 2020, was feeling well enough to contemplate traveling to Hawaii. (Tr. 36–37).

The Court finds that, in his written explanation, the ALJ discussed each of the Polaski factors before discounting the Plaintiff's subjective complaints due to lack of support of medical evidence. While this discussion took the form of outlining and restating the objective medical evidence, such an explanation is permissible since the evidence set forth the inconsistencies between the Plaintiff's subjective complaints and the observations of her medical providers. See Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021) (holding that an ALJ is not required to discuss each Polaski factor as long as he acknowledges and considers the factors before discounting a claimant's subjective complaint).

The ALJ, while acknowledging the Plaintiff's personal complaints of sustainable chronic pain, made a determination that the Plaintiff was able to perform the light work that he outlined in the RFC.

### ii.    Plaintiff's Mental Health Complaints

As for the Plaintiff's subjective mental health complaints, the ALJ stated that the records show treatment for her mental health was both conservative <u>and</u> effective. (Tr. 36). The ALJ stated that Plaintiff continued with her mental health management every three months and had no significant medication changes through November of 2020. (Tr. 36, 352, 354-55, 1703, 1723).[6] The ALJ noted that Plaintiff had even reported that her symptoms had substantially improved in April 2020, and she had reported her panic attacks could be controlled by medication. (Tr. 37, 413-414). The Eighth Circuit has held that "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." <u>Hensley v. Colvin</u>, 829 F.3d 926, 933 (8th Cir. 2016) (quoting <u>Brace v. Astrue</u>, 578 F.3d 822, 885 (8th Cir. 2009).

Plaintiff objects to the ALJ's finding that the "situational circumstances of a breakup with her boyfriend and relapse with substances explain the decompensation in April 2021, rather than a condition that will persist for 12 months." (Tr. 33; Plf.'s Mem. [Docket No. 13] at p. 26). Plaintiff contends that the ALJ neither relied upon nor cited any medical evidence to support the ALJ's finding that Plaintiff's decompensation will not persist for 12 months or was even caused by "situational circumstances." (Plf.'s Mem. [Docket No. 13] at p. 26). Plaintiff points out that she was instead diagnosed with a major depressive disorder recurrent, moderate without psychotic features as well as panic attacks with agoraphobia. (Tr. 1860).

However, the ALJ did not come to his RFC determination regarding Plaintiff's decompression in a vacuum. Instead, the ALJ clearly considered and cited many reports from 2020 that suggest many external factors influenced her mental health, such as her cousin moving into

---

[6] The ALJ also stated that Plaintiff was prescribed Klonopin for use on an as needed basis to help treat her anxiety, but the treatment notes in July of 2020 indicate that Plaintiff had accumulated a stash of this medication due to her not using it. (Tr. 36, 1703)

her home May of 2020 (Tr. 405, 1694, 1695), and her boyfriend and mom moving in with her (Tr. 1709). Her therapist noted normal mental status findings from May 2020 through August 2020, and although Plaintiff reported suicidal ideation at times, Plaintiff was not referred to any emergency or crisis services or increased psychiatric visits. (Tr. 405, 409, 413, 418, 425, 429, 433, 1694, 1688, 1692, 1695, 1699, 1706, 1712, 1716, 1719).[7]

The Court finds that the ALJ's decision to decrease the RFC from the "medium work" with postural limitation as opined by the State Agency Consultants and reduce it further to "light work" rather than finding Plaintiff disabled is supported by substantial evidence in the record as a whole. The Court "defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation." Nash v. Comm'r of Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016)).

### C. Plaintiff's Argument that the RFC Determination is Not Supported by Substantial Evidence on the Record.

Finally, Plaintiff asserts a catchall argument and contends that the ALJ's RFC determination is not supported by substantial evidence in the record. (Plf.'s Mem. [Docket No. 13] at pp.11-19, 24–27; Plf.'s Reply Brief [Docket No. 16] at p. 5).[8]

As already noted, "[a] claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A

---

[7] The ALJ also considered that Plaintiff had admitted herself to the hospital with significant cuts to her left hand and wrist, which she claimed were from her boyfriend assaulting her. However, police on the scene reported no evidence to support anyone other than the Plaintiff herself inflicted the wounds, and the claimant's mother and boyfriend also reported the claimant had threatened suicide. The Plaintiff's treating providers noted she did not appear to be at imminent risk for self-harm and did not meet the criteria to be on hold for further evaluation. (Tr. 1864). Yet, the Plaintiff also self-reported having "so much fun socializing" in a large gathering of at least forty people. (Tr. 37, 1688-1689).

[8] This argument is interwoven throughout Plaintiff's brief. While the argument is not specifically enumerated in the Plaintiff's headings, the Court will still analyze the argument since it is part and parcel of Plaintiff's claims.

disability claimant has the burden to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

Because Plaintiff's final argument is interwoven with her other arguments, and this Court has already addressed those arguments, it is not necessary to do so again here. To the extent Plaintiff's catchall argument relies on those already-asserted arguments, it is unpersuasive. See supra.

Plaintiff also asserts, that the ALJ erred by making no mention of "any of Plaintiff's orthopedic care for her knees during the relevant time" and therefore, he "did not include any evaluation of Plaintiff's knee impairments." (Plf.'s Mem. [Docket No. 13] at p. 17).[9] However, the very portions of the ALJ's decisions that Plaintiff also argued previously were examples of him drawing inferences from raw medical data were, in fact, a collection of cites to the observations, conclusions, and opinions of Plaintiff's treating physicians. (Tr. 32, 1811–1812, 1835, 2050, 2092, 2152, 2172, 2201–2202). The ALJ did consider Plaintiff's knee conditions. The ALJ's decision, while not entirely based on consultants or witnesses, was still based on the opinions of the medical practitioners who were treating Plaintiff. Moreover, an ALJ's "failure to cite specific evidence does not indicate that it was not considered." Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); see also Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); McCoy, 648 F.3d at 615.

Plaintiff's catchall argument is essentially an invitation for this Court to reweigh the whole of the medical evidence in the record and to come to a different conclusion than the ALJ, which the Court cannot do. See Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. To the extent that Plaintiff

---

[9] Plaintiff points out that both SAMCs noted there was no evidence of knee issues in the record at the time that portion of the Record was made. (Plf.'s Mem. [Docket No. 13] at p. 18) (citing Tr. 100, 117). As a result, the State Agency Medical Consultants did not consider the Plaintiff's knee condition, which prompted the ALJ to consider the Plaintiff's medical record regarding her knee. This, in turn, prompted Plaintiff's previous assertion that the ALJ drew in inferences from raw medical data—an argument the Court has already addressed above.

argues that there was also substantial evidence in the record that might have supported additional RFC limitations and thus a finding of disability, this Court may <u>not</u> reverse the ALJ simply because substantial evidence exists to support an opposite conclusion. <u>See</u> <u>Milam</u>, 794 F.3d at 983. Nor can this Court substitute its own judgment or findings of fact for those of the ALJ. <u>See</u> <u>Woolf</u>, 3 F.3d at 1213.

Therefore, this Court finds Plaintiff's catchall argument that the ALJ's RFC determination is not supported by substantial evidence in the record as a whole to be unpersuasive.

**V. Conclusion**

The Court's review of the record indicates that the ALJ's RFC determination is supported by substantial evidence.

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request to reverse the ALJ's decision, [Docket No. 13], be **DENIED**; and

2. Defendant's request to affirm the ALJ's decision, [Docket No. 15], be **GRANTED**.

Dated: January 17, 2023                          s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 United States Magistrate Judge

<u>**NOTICE**</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).